# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 29, 2008

Charles R. Fulbruge III
Clerk

No. 06-70048

WILLIE EARL PONDEXTER, JR

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before BARKSDALE, BENAVIDES, and STEWART, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

In 1994, Willie Earl Pondexter was convicted in Texas state court of capital murder and sentenced to death. Although he was denied habeas relief in state court in 1999, the district court granted such relief in September 2002. Our court vacated that relief in 2003, however, and remanded to district court. On remand, habeas relief was denied in September 2006. Pondexter contests that denial.

At issue, pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), is whether the state-court decision denying habeas relief was unreasonable. In that regard, primarily at issue is the state-court denial of one

of Pondexter's four ineffective-assistance-of-counsel claims: trial counsel's failure to consult with, and present the testimony of, a pathologist. AFFIRMED.

I.

The pertinent facts concerning the murder were summarized in our 2003 opinion vacating the district court's granting relief:

> On the night of October 28, 1993, Ricky Bell, James Bell, Deon Williams, and Pondexter met at an apartment and discussed robbing "an old lady". Following this discussion, the group walked to a corner store, and then to [the victim's] house where they checked to see what kind of car she owned. The group then walked to a trailer park, and then to a friend's house. Once there, they met with James Henderson. Pondexter borrowed a car and all five drove to Annona to buy beer and go to a club. During the drive to and from Annona, the five talked about robbing "the old lady", and about "crips and bloods and stuff". Specifically, they discussed which crip "had the heart" to do what they were planning to do to "the old lady". On the way to the victim's house, the group stopped at a store where they talked about which crip had the heart to knock out a man who happened to be getting gas. Although Williams and Henderson did get out of the car, no harm was actually done to the man. The group drove to the victim's house, but parked the car a few blocks away. On their first attempt to enter the house, they were scared away by the sight of a patrolling police car. Four of the five ran back to the car, but James Bell ran in another direction and was not seen by the rest of the group again that night. Pondexter, Henderson, Williams, and Ricky Bell went back to the victim's house where Pondexter kicked in the front door. All four proceeded up the stairs and into the bedroom where the victim was sitting on her bed.
> Once all four were in the bedroom, Williams took the seven dollars that was in the victim's coin purse. Immediately thereafter, Henderson shot the victim in the head and handed the gun to Pondexter. Pondexter also shot the victim in the head, stating "that's how you smoke a bitch". The four drove to Dallas and were arrested in the victim's car.

Pondexter v. Dretke, 346 F.3d 142, 144 (5th Cir. 2003) (emphasis added) (footnote omitted). The victim was 84-years-old.

Pondexter and Henderson were charged with capital murder. Pondexter claims that, while in custody, he told Michael Kendricks (who was in custody on unrelated charges) that he knew the victim was already dead when he shot her. Kendricks provided this information to a State investigator.

Henderson was tried first. Relying on the testimony of co-conspirator Williams, the State established Henderson shot the victim first, through the brain. Henderson was convicted of capital murder and sentenced to death.

At Pondexter's subsequent trial in 1994, the State did not rely on, nor was the jury instructed on, Texas' law of the parties, although such an instruction was presumably available to the State. See id. at 145 n.3. Instead, the State maintained Pondexter had fired the fatal shot through the brain. Pondexter anchored his defense on two theories. His primary position was that, although he participated in the robbery of the victim, he did not shoot her. His alternative theory was that, because the gunshot, fired by Henderson, into the victim's brain would have killed her instantly, the subsequent shot Pondexter fired into the victim's face was not culpably lethal. Kendricks testified for the State that Pondexter told him he shot the victim in the jaw. (As discussed infra, as two of his ineffective-assistance-of-counsel claims, Pondexter asserts his trial counsel neither consulted a pathologist nor interviewed Kendricks.)

The autopsy report, introduced at trial, identified two gunshot wounds as the cause of death. The medical examiner, Dr. Guileyardo, testified: both wounds were inflicted while the victim was still alive; and either could have killed her. Along that line, Dr. Guileyardo testified: one bullet entered the left side of the victim's face (the autopsy report provided that the bullet entered "at the left aspect of the face, 6 inches below the top of the head and 2-1/2 inches anterior to the left ear canal") and exited below her right ear, perforating her oral cavity, boring a hole through her tongue, and shattering her right jawbone;

and the other bullet entered the victim's forehead, traveled through her brain, and exited at the back of her head.

A jury convicted Pondexter of capital murder; he was sentenced to death. The conviction and sentence were affirmed on appeal. Pondexter v. State, 942 S.W.2d 577, 579-80 (Tex. Crim. App. 1996), cert. denied, 522 U.S. 825 (1997).

Pondexter filed a state-habeas petition challenging his conviction and death sentence. He maintained, inter alia: (1) his right to effective assistance of counsel was violated by trial counsel's failure (a) to consult with, and call, a pathologist, (b) to interview Kendricks (who allegedly could have provided evidence negating an element of the offense), and (c) to object to the prosecutor's improper jury argument; (2) his right to due process was violated when the State failed to disclose to Pondexter a statement made by Kendricks to law enforcement that Pondexter had told him he knew the victim was dead when he shot her (later, the statement was in an affidavit for habeas purposes); and (3) his right to due process and a fair trial was violated by the prosecution's alleged misstatements of evidence during jury argument in the guilt-innocence phase of trial that advanced a theory of the case inconsistent with all known evidence.

For that state-habeas petition, Pondexter's post-conviction counsel consulted Dr. Bolesta, a pathologist, who examined, inter alia, testimony, witness statements, autopsy photographs, and the autopsy report. Pondexter contested the medical examiner's (Dr. Guileyardo's) testimony, and asserted his alternative defense theory: he shot the victim through the jaw; and that shot did not kill her (cause-of-death claim). Pondexter also challenged the medical examiner's cause-of-death testimony as unreliable, and contended his trial counsel rendered ineffective assistance by failing to retain, and present testimony from, a pathologist to rebut the medical examiner's opinions. The medical examiner's autopsy report, which had been admitted at trial, was included with Pondexter's state-habeas application.

In August 1998, the state-habeas court held a one-day evidentiary hearing to allow Pondexter, inter alia, to expand on his actual-innocence claim. Among other points addressed were the two issues concerning Pondexter's asserted statements to Kendricks.

At the hearing, Dr. Bolesta, on behalf of Pondexter, testified that the first shot—to the victim's forehead—was universally fatal, while the second—to the left side of her face—was only potentially fatal. In response, Dr. Guileyardo, the medical examiner who had performed the autopsy and had testified at trial, again maintained: either of the two gunshot wounds could have caused the death; and the victim most likely died from a combination of the two wounds. Dr. Guileyardo also distinguished brain death from actual death and stated the presence of blood in the victim's mouth and throat indicated her heart was still beating when she was shot in the face.

In October 1998, in a 23-page opinion, addressing 16 claims and containing 168 findings-of-fact and conclusions-of-law, the state-habeas trial court recommended denying habeas relief. For the issues before us, it did so for the following reasons.

It concluded: Dr. Guileyardo's testimony was more credible than Dr. Bolesta's; the trial evidence supported a conclusion that Pondexter shot the victim in the brain; both gunshot wounds contributed to the victim's death; and she was alive when Pondexter shot her.

In addition, the state-habeas trial court made the following recommendations concerning trial counsel's not having a pathologist testify. Recommending trial counsel's performance was not deficient under Strickland v. Washington, 466 U.S. 668 (1984), the court stated: Dr. Bolesta's testimony admitted both wounds were capable of causing death; Dr. Bolesta's testimony did not differ substantially from Dr. Guileyardo's; and, trial counsel may have

strategically planned on not calling a pathologist. (No affidavit was submitted attesting to trial counsel's not consulting with a pathologist.)

The state-habeas trial court recommended denying Pondexter's ineffective-assistance-of-counsel (IAC) claim for trial counsel's not interviewing Kendricks. It concluded that Pondexter failed to establish both deficient performance and prejudice.

It also recommended denying the IAC claim based on trial counsel's not objecting to the prosecutor's closing argument. The court concluded: any objection would have been meritless; and, therefore, Pondexter failed to establish the deficiency-prong of Strickland.

Because Pondexter failed to specifically argue each instance of asserted IAC, the state-habeas court recommended denial of his cumulative-IAC claim.

Regarding Pondexter's claim under Brady v. Maryland, 373 U.S. 83 (1963), and because it found Kendricks' affidavit (concerning his statement to law enforcement) not exculpatory, the court recommended no Brady violation occurred.

The state-habeas trial court recommended denying Pondexter's misstatement-of-the-evidence claim because Pondexter failed to object contemporaneously to any of the alleged improper jury arguments and, therefore, the claim was waived.

In 1999, in a two-page order, without additional reasons, the Texas Court of Criminal Appeals (TCCA) adopted the state-habeas trial court's recommendation and denied relief. Ex parte Pondexter, No. 39,706-01 (Tex. Crim. App. 27 Jan. 1999). Pondexter did not seek review by the Supreme Court of the United States.

Pondexter filed the instant federal habeas application in November 1999, presenting 20 claims. The district court granted relief on the first claim, concluding: the state-court decision that trial counsel's failure to consult with,

and present the testimony of, a pathologist did not constitute IAC was unreasonable under AEDPA. In so doing, the district court ruled the evidence was sufficient to demonstrate prejudice for purposes of the IAC pathologist claim. Pondexter v. Cockrell, No. 6:99CV068 (E.D. Tex. 24 Sept. 2002). Having granted relief on the IAC pathologist claim, the district court did not rule on the other claims. Id.

In September 2003, our court vacated that relief and remanded, holding: the state-habeas court's implied decision that Pondexter was not prejudiced by counsel's failure to call a pathologist was not an unreasonable application of federal law under AEDPA's deferential standard. Pondexter, 346 F.3d at 153. (The state-court prejudice-prong determination was "implied" because it had found trial counsel's performance was not deficient and, therefore, did not reach prejudice.) The Supreme Court denied review in May 2004. Pondexter v. Dretke, 541 U.S. 1045 (2004).

On remand, in the light of an intervening Supreme Court decision discussed infra, Pondexter filed a supplemental brief seeking to have the district court, inter alia, revisit the IAC pathologist claim. In September 2006, the district court: refused to reconsider the IAC claim previously denied by our court; rejected the remainder of Pondexter's claims; and granted judgment for the State. Pondexter v. Quarterman, No. 6:99CV68, 2006 WL 2822173 (E.D. Tex. 27 Sept. 2006). In March 2007, pursuant to 28 U.S.C. § 2253, the district court granted a certificate of appealability (COA) for three of the four issues Pondexter requested to be certified for appeal. Those certified issues are:

1.  Whether Pondexter's trial counsel rendered IAC by failing to (a) consult with and present the testimony of a pathologist (IAC pathologist claim), (b) interview witness Kendricks, and (c) object to the prosecution's improper closing argument; or whether there is (d) cumulative error;

2.  Whether the State withheld a statement by Kendricks, in violation of Brady; and

3.      Whether the prosecution's use of inconsistent theories and argument offered at the trials of Pondexter and Henderson violated Pondexter's due process rights.

Concerning the COA for the IAC pathologist claim, and as discussed infra, although the district court refused to reconsider that claim on remand, it nevertheless felt that issue should be reconsidered on appeal.

II.

Accordingly, those three certified issues are presented here, with our review being controlled by AEDPA. See, e.g., Penry v. Johnson, 532 U.S. 782, 792 (2001). Pursuant to AEDPA, where a state court has rejected a habeas claim, a federal court may grant relief only if the state-court decision: (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d). In reviewing the district court's application of § 2254(d) to the state-court decision, the district court's findings of fact are reviewed for clear error; its conclusions of law, de novo. E.g., Foster v. Johnson, 293 F.3d 766, 776 (5th Cir. 2002). Needless to say, for deciding whether the state-habeas court decision was unreasonable, we must consider the elements for each claim, including what was presented in support. See, e.g., Miller v. Dretke, 431 F.3d 241, 361 (5th Cir. 2005).

A.

Pondexter first advances his IAC claim, maintaining trial counsel was ineffective for failing: to consult with, and present the testimony of, a pathologist; to interview witness Kendricks; and to object to the prosecution's closing argument. He also asserts cumulative error.

For purposes of our AEDPA review of the state court's rejection of the IAC claim, and under Strickland, 466 U.S. at 687-89, IAC could be established in state court by demonstrating (1) counsel's deficient performance, and (2) resulting prejudice. Of course, for habeas review under AEDPA, the state court's performance and/or prejudice rulings are generally reviewed to determine only whether the state-court decision is unreasonable, not whether, in federal court, petitioner has shown each IAC prong. E.g., Schaetzle v. Cockrell, 343 F.3d 440, 443-44 (5th Cir. 2003). Generally, that task must be accomplished in state court. Id.

The reviewing court "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy". Wilkerson v. Collins, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing Strickland, 466 U.S. at 690). An IAC claim may be rejected for want of either deficient performance or prejudice. Therefore, the absence of either prong of the claim is dispositive, and a reviewing court is not required to inquire into a prong of the claim if the defendant has failed to carry his burden on the other prong. Strickland, 466 U.S. at 697.

In state court, to establish deficient performance, Pondexter was required to show that, in the light of all the circumstances as they appeared at the time of the conduct, counsel's performance fell below an objective level of reasonableness. Strickland, 466 U.S. at 687-688. "Judicial scrutiny of counsel's performance must be highly deferential" with every effort made to avoid "the distorting effects of hindsight". Id. at 689-90. Further, as stated, reviewing courts are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". Id. at 689. Indeed, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that

it permeates the entire trial with obvious unfairness".  Crane v. Johnson, 178 F.3d 309, 314 (5th Cir. 1999) (citation and internal quotation marks omitted).

As discussed, even if counsel's representation was deficient, such performance must be prejudicial to the defense.  Strickland, 466 U.S. at 692.  In state court, to establish prejudice, Pondexter was required to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine the confidence in the outcome".  Id. at 694.

### 1.

For his first IAC claim, Pondexter maintains trial counsel failed to consult with, and present the testimony of, a pathologist (IAC pathologist claim).  In this regard, however, Pondexter did not present an affidavit, in the state or district courts, concerning whether trial counsel consulted with a pathologist.  The State fails to note this important point.

Ordinarily, parties are required to present evidence, often attached as an exhibit, to support claims in a habeas petition.  On the other hand, it appears the State, during both state-and federal-habeas proceedings, conceded that Pondexter's trial counsel did not consult with a pathologist.  (It is of record, of course, that he did not have a pathologist testify.)  Accordingly, Pondexter's IAC claim will be analyzed under the assumption that trial counsel did not consult with a pathologist.

### a.

In addressing this IAC pathologist claim, both parties focus almost exclusively on Strickland's prejudice prong.  As noted, however, if a court rules trial counsel's performance was not deficient, prejudice need not be addressed.  See Strickland, 466 U.S. at 697.

In recommending denying habeas relief for this IAC claim, the state-habeas trial court concluded that trial counsel's performance was not deficient.

As discussed infra, in addressing this claim, however, that court did not expressly address the prejudice prong. Without providing additional reasons, the TCCA adopted the trial court's recommended findings of fact and conclusions of law and denied relief.

On its first federal-habeas review, the district court concluded the state-court determination that trial counsel's performance was not deficient was unreasonable under AEDPA.

Pondexter maintains the district court's deficient-performance ruling was not disturbed by this court. To place this misleading "not-disturbed" contention in as kind a light as possible, this is simply because this prong was not reached. Indeed, our opinion stated: "Because we conclude that Pondexter failed to show he was prejudiced by counsel's failure to call a pathologist, we do not address the deficiency prong". Pondexter, 346 F.3d at 147 (emphasis added).

In any event, Pondexter devotes only one paragraph in his brief to the deficient-performance prong, stating it "is easily met in this case". In a footnote, he asserts that our court "assumed without deciding . . . [he] satisfied the first prong of Strickland". As noted above, that is quite incorrect.

As required, our court has consistently given great weight to trial counsel's judgment on strategy and approach. Consistent with that, "[t]actical decisions, made on an informed and reasoned basis, do not fall below Strickland standards simply because they do not succeed as planned". Jones v. Butler, 837 F.2d 691, 693-94 (5th Cir. 1988); see also Granados v. Quarterman, 455 F.3d 529, 533-34 (5th Cir. 2006); Busby v. Dretke, 359 F.3d 708, 715 (5th Cir. 2004); Lowenfield v. Phelps, 817 F.2d 285, 291 (5th Cir. 1987).

At trial, Pondexter's primary theory was that he did not shoot the victim. His alternative theory was that he fired the second shot. We assume Pondexter's trial counsel was aware of Dr. Guileyardo's autopsy report, which was entered in evidence at trial, and was aware he would testify for the State.

Pondexter had different attorneys for trial, direct appeal, and state-habeas proceedings. As noted supra, the record contains no affidavit from Pondexter's trial attorney either concerning whether he consulted with a pathologist, or explaining why he did not call one at trial.

With regard to deficient performance vel non, the state-habeas court concluded: "[Pondexter] has failed to demonstrate any specific deficiency on the part of trial counsel by failing to consult and/or call a pathologist to testify"; and "[t]rial counsel's actions in not calling their own expert, and only cross-examining the state's expert, may have been strategy". For the above-stated reasons, that conclusion was arguably not contrary to, or an unreasonable application of, Strickland and its progeny, and did not otherwise result in an unreasonable decision. See 28 U.S.C. § 2254(d). Nevertheless, because the prejudice prong presents a more certain basis for deciding the IAC pathologist claim, we need not make a decision, under AEDPA's deferential standard of review, on the deficient-performance prong.

b.

For ruling, under AEDPA, on the prejudice prong, we must first decide whether the state-habeas court considered this prong. With regard to recommending denying habeas relief for Pondexter's cumulative error claim, the state-habeas court concluded, inter alia: "[B]ecause of overwhelming evidence of guilt and extensive punishment evidence, Pondexter has failed to show prejudice to his case". (Emphasis added.) The cumulative error claim, of course, included Pondexter's IAC pathologist claim. Arguably, therefore, the state court made a finding of no prejudice with respect to that IAC pathologist claim. The conclusions of law addressing "failure to consult", however, address only deficient performance.

In granting relief on its first federal-habeas review, the district court held: the state-court decision that trial counsel was not ineffective was unreasonable.

12

As discussed, our court reversed and remanded, holding the district court did not apply proper AEDPA deference to that decision. Pondexter, 346 F.3d at 147. We "conclude[d] . . . Pondexter failed to show he was prejudiced by counsel's failure to call a pathologist", explaining "that a federal habeas court is authorized by Section 2254(d) to review only a state court's decision, and not the written opinion explaining that decision". Id. at 147-48 (citation and internal quotation marks omitted). We noted the state court's express findings that Pondexter's expert, Dr. Bolesta, was less credible than the State's medical examiner, Dr. Guileyardo. Id. at 149. Because we found the state-court ultimate conclusion was reasonable under AEDPA, we held "the district court [failed to] afford[ the] proper weight to it in making the prejudice determination". Id. at 149-50.

After oral argument, but before our first panel rendered its decision, the Supreme Court decided Wiggins v. Smith, 539 U.S. 510 (2003). Among the issues in Wiggins was whether trial counsel rendered ineffective assistance for failure to investigate. After reaching a decision contrary to the state court's on deficient performance, the Court turned to the prejudice prong. Because "neither of the state courts below reached this prong of the Strickland analysis", the Court's review was "not circumscribed by a state court conclusion with respect to prejudice". Id. at 534. Pondexter raised this point in his petitions for rehearing en banc to this court and for a writ of certiorari to the Supreme Court, asserting Wiggins required no AEDPA deference for the prejudice-prong of his IAC pathologist claim. As discussed, each petition was denied.

Accordingly, on remand to district court, Pondexter again maintained Wiggins required no AEDPA deference for claims not adjudicated on the merits in state court. See id. Specifically, Pondexter maintained that, for his IAC pathologist claim, because the state court made no findings with respect to prejudice, that prong of Strickland is reviewed de novo. In September 2006, the district court rejected that assertion, citing this court's prior opinion. Although

it found "[Pondexter's] arguments compelling", it was persuaded that, "[i]n [the] light of the timing of the Supreme Court decision [in Wiggins]" and when our court rendered its first opinion, "it should not review [Pondexter's] claim under the de novo standard of review". Pondexter, 2006 WL 2822173, at *21.

Any doubt about the proper standard of review of an ineffective-assistance prong not considered by a state court was resolved by Rompilla v. Beard, 545 U.S. 374, 390 (2005). Rompilla was issued after Pondexter filed his supplemental briefing on remand, but prior to the district court's opinion. Neither discusses this case.

At issue in Rompilla was whether trial counsel's failure to examine the defendant's prior conviction file rendered his performance constitutionally ineffective. Id. at 383. Addressing that claim under Strickland, the Court first held unreasonable the state-court decision that trial counsel's performance was not deficient. Id. at 383-90. Turning to the prejudice-prong, the Court noted: "Because the state courts found the representation adequate, they never reached the issue of prejudice". Id. at 390. Accordingly, the Court held it must "examine [that] element of the Strickland claim de novo". Id. (citing Wiggins, 539 U.S. at 534).

The State claims in its brief that the law-of-the-case doctrine precludes this IAC pathologist claim "because this Court already determined that the state court's findings and conclusions sufficiently addressed the prejudice prong of Strickland enough to warrant deference under the AEDPA". Pondexter counters: the intervening-controlling-authority exception to the law-of-the-case doctrine applies; and this court should afford de novo review to the prejudice prong of this claim. See United States v. Agofsky, 516 F.3d 280, 283 (5th Cir. 2008) (recognizing exception), petition for cert. filed, No. 07-10762 (2 May 2008).

As stated supra, our court held on Pondexter's first appeal that he failed to establish prejudice sufficient to demonstrate, under AEDPA, that the state-

court decision was unreasonable. On remand, the district court, apparently recognizing that holding, did not again review this IAC pathologist claim, citing only our prior opinion to deny it. In his application to the district court for a COA, Pondexter again raised this claim, "[e]specially in [the] light of the apparent conflict between the Fifth Circuit's application of § 2254(d) and that recently endorsed by the Supreme Court [in Wiggins and Rompilla]". For granting COA under AEDPA, the district court apparently found sufficient merit in this assertion because it certified the IAC pathologist claim for appeal.

The law-of-the-case doctrine "generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal". Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am., 272 F.3d 276, 279 (5th Cir. 2001) (citation and internal quotation marks omitted). The doctrine is "premised on the salutary and sound public policy that litigation should come to an end". Id. (citation and internal quotation marks omitted). Under this doctrine, a prior decision will be followed without re-examination unless, inter alia, "there has been an intervening change of law by a controlling authority". Agofsky, 516 F.3d at 283 (citation and internal quotation marks omitted).

For the reasons provided supra, we will assume the state court did not rule on the prejudice prong of Strickland. Therefore, we agree that, because of an intervening change in the law, see Wiggins, 539 U.S. at 534; Rompilla, 545 U.S. at 390, the law of the case doctrine would not preclude our review of the prejudice prong for the IAC pathologist claim.

The State also seeks to benefit from Pondexter's having briefed Wiggins in his petitions for rehearing en banc and for a writ of certiorari to the Supreme Court. As a result, the State again asserts the law-of-the-case doctrine precludes his raising the issue here. Our court, however, has held that such denials do not

constitute a decision on the merits. See, e.g., Alpha/Omega Ins. Servs., Inc., 272 F.3d at 281.

Pondexter relies heavily on Rompilla, maintaining it requires us to review the prejudice prong of this IAC claim de novo, rather than, under AEDPA deference, deciding whether the state-court decision was unreasonable. It is unnecessary, however, to decide this question because, even under a de novo standard of review, Pondexter fails to establish prejudice.

Under such plenary review, Pondexter fails to establish that, had trial counsel consulted with, and/or presented, a pathologist, the jury's verdict would have been different. The jury was presented with the testimony of an eyewitness that Pondexter shot the victim after Henderson fired the first shot. The State also presented the medical testimony of Dr. Guileyardo. He testified that the second bullet entered the left side of the victim's face and exited below her right ear, perforating her oral cavity, boring a hole through her tongue, and shattering her right jawbone. It was Dr. Guileyardo's opinion that both gunshot wounds were inflicted while the victim was still alive, and that either shot could have killed her.

Pursuant to our de novo review, we conclude that the jury, cognizant of overwhelming evidence of guilt, would have found Pondexter guilty even if trial counsel had consulted with, and/or called, a pathologist. As a result, there is not a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". Strickland, 466 U.S. at 694 (emphasis added).

## 2.

For his second IAC claim, Pondexter asserts trial counsel was ineffective for failing to interview Kendricks, Pondexter's cellmate. Pursuant to Kendricks' affidavit, attached to Pondexter's state-habeas petition, Pondexter allegedly provided the following information to Kendricks: Pondexter "confessed to

[Kendricks] that he fired the second shot into the victim"; he "knew that the victim . . . was already dead before he shot her"; and he shot her to "show[] off in front of the others" and to show them "the way to do it". (The last comments apparently are linked to Pondexter's boasting, after shooting the victim, "that's how you smoke a bitch", as quoted supra.) Kendricks also stated, in the affidavit, that he provided this information to the State before Pondexter's trial.

The state-habeas court concluded that, "[b]ecause the information in [Kendricks'] affidavit was not exculpatory, [trial] counsel was not deficient for failing to have this information brought to the attention of the jury". In any event, the state-habeas court also found no prejudice because "[t]he statements would have added nothing to Pondexter's defense".

On remand, the district court concluded it was not unreasonable for the state court to rule that Pondexter's trial counsel was not ineffective for failing to interview Kendricks.

The state-habeas court decision that counsel's performance with respect to this issue was neither deficient nor prejudicial is not unreasonable under AEDPA. As noted by both the state-habeas trial court and district court, if Pondexter made statements to Kendricks, it was Pondexter who was in the best position to notify his counsel of the need to obtain that information. See, e.g., Boyd v. Johnson, 167 F.3d 907, 910 (5th Cir. 1999).

The record is devoid of an affidavit from trial counsel or Pondexter attesting to whether Pondexter did not notify counsel of Pondexter's alleged statements to Kendricks. Only Pondexter's state-habeas counsel provided an affidavit, attached to Pondexter's state-habeas petition, stating he spoke with trial counsel, who "did not believe that they spoke with . . . Michael Kendricks". (Emphasis added.) The affidavit does not state, however, whether Pondexter notified trial counsel of his alleged statements to Kendricks.

Even assuming, arguendo, as unreasonable, under AEDPA, the state-court decision that trial counsel's failure to interview Kendricks was not deficient performance, the state-court decision that the statement at issue was not exculpatory and does not establish prejudice is not, under AEDPA, an unreasonable application of Strickland. Pondexter presented an innocence-defense at trial, and the jury had overwhelming evidence by which to convict him.

3.

For his third IAC claim, Pondexter maintains: the prosecutor's stating in closing argument that it was Pondexter who shot the victim through the brain was improper; and, accordingly, his counsel was ineffective for failing to object. The state court concluded that the prosecutor's arguments were proper, and as a result, objections would have been meritless. Accordingly, it concluded Pondexter failed to establish the deficiency-prong of Strickland. In addition, that court concluded no prejudice was shown because of the overwhelming evidence of guilt.

On remand, pursuant to AEDPA, the district court found unreasonable the state-court decision that trial counsel was not deficient for failing to object, but held that the state-court's no-prejudice conclusion was reasonable, under AEDPA, because, even if trial counsel had objected, and the jury had been instructed to disregard the argument, the jury nevertheless could have reasonably concluded Pondexter's shot to the victim's face was the cause of death.

Even assuming the state-court decision that trial counsel's performance was not deficient is unreasonable under AEDPA, the overwhelming evidence of Pondexter's guilt precluded his establishing prejudice in the state-habeas court. As discussed, Dr. Guileyardo testified the victim was alive before the second gunshot was fired, and that the cause of death was a result of both wounds.

Accordingly, under AEDPA, the state-court decision that no prejudice resulted was not unreasonable.

4.

For his final IAC claim, Pondexter asserts the above three claims, when considered cumulatively, render trial counsel's performance ineffective. The state-habeas trial court recommendation was that "Pondexter's failure to specifically argue each instance of alleged ineffective assistance of counsel [rendered] his claims [to be] multifarious and waived". Alternatively, it recommended that Pondexter failed to establish both deficiency and prejudice. As noted, the TCCA adopted those recommendations.

On remand, the district court noted that "[m]eritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised". We agree. Therefore, the state-court decision, under AEDPA, was not unreasonable.

B.

Pondexter maintains the State, in violation of Brady, suppressed evidence that allegedly demonstrates Pondexter did not intend to cause the victim's death. 373 U.S. 83. In so doing, he asserts the State withheld information that Kendricks (Pondexter's cellmate, who testified for the State at trial about Pondexter's jailhouse statement to him) told an investigator before trial that Pondexter said he knew the victim was dead when he shot her.

The state-habeas trial court recommended denying the claim. It found: Kendricks' affidavit was not exculpatory; and, in any event, "Pondexter should have been aware of the statements, because he supposedly made them". That court concluded the self-serving affidavit supplied by Kendricks was not a basis for habeas relief. It found "no reasonable likelihood that this evidence, had it come before the jury, would have altered the outcome of the trial". Again, as noted, the TCCA adopted those recommendations.

The district court stated: Pondexter "failed to produce evidence demonstrating that the prosecution suppressed exculpatory evidence". As had the state-habeas court, the district court also noted Pondexter was in the best position to inform his trial counsel of the alleged knew-the-victim-was-dead statement he made to Kendricks.

Brady held: "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution". 373 U.S. at 87. In order to establish a Brady-claim in state-habeas court, Pondexter had to demonstrate "that the prosecution suppressed favorable, material evidence that was not discoverable through due diligence". Kutzner v. Cockrell, 303 F.3d 333, 336 (5th Cir. 2002) (citations omitted); see also Rector v. Johnson, 120 F.3d 551, 558-59 (5th Cir. 1997) (citations omitted).

As our court has made clear, "[e]vidence is not 'suppressed' if the defendant 'knows or should know of the essential facts that would enable him to take advantage of it'". United States v. Runyan, 290 F.3d 223, 246 (5th Cir. 2002) (citation omitted). In sum, the State was not required by Brady to supply the defendant with "evidence that [was] fully available . . . through the exercise of reasonable diligence". Kutzner, 303 F.3d at 336. In such a situation, the defendant bears the responsibility for his failure to investigate diligently. Id. (citation omitted); see also United States v. Brown, 628 F.2d 471, 473 (5th Cir. 1980) ("[W]hen information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no Brady claim". (citations omitted)).

As noted, Pondexter asserts only that the State suppressed statements he allegedly made to Kendricks while incarcerated with him. As discussed earlier, if Pondexter made these statements to Kendricks, Pondexter, of course, was fully

aware both of having done so and of Kendricks' ability to verify they had been made. Accordingly, because he would have possessed the information at the time of trial, the state-court denial of his Brady claim was not unreasonable under AEDPA. See Brown, 628 F.2d at 473.

C.

Pondexter's final claim is that his due-process rights were violated by the prosecution's use of inconsistent theories at the separate trials of his co-defendant Henderson and then of Pondexter. Pondexter contends: at Henderson's trial, the State asserted it was Henderson who fired the shot through the victim's brain; but, subsequently, at Pondexter's trial, the State maintained it was Pondexter who fired that shot.

1.

Pondexter raised this inconsistent-theories claim for the first time in the district court in supplemental briefing following remand by our court. He again raised this claim in his application for a COA with that court. In other words, Pondexter did not present this claim in either his state-court direct appeal or his state- or federal-habeas petitions. On remand, the district court did not address this specific claim although, as noted, Pondexter raised it in his post-remand supplemental briefing. The State fails to raise this procedural bar. Ordinarily, "[c]laims not raised in state court . . . cannot be considered on federal-habeas because they are not exhausted". Miller, 431 F.3d at 244; see 28 U.S.C. § 2254(b)(1)(A). On the other hand, the court may "deny (but not grant)" an unexhausted claim on the merits. Miller, 431 F.3d at 245 (emphasis in original); 28 U.S.C. § 2254(b)(2); see also Neville v. Dretke, 423 F.3d 474, 482 (5th Cir. 2005) ("[C]onsistent with its goal of providing for the speedy resolution of federal petitions, AEDPA provides that applications may be denied on the merits, 'notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State'". (quoting 28 U.S.C. § 2254(b)(2))).

It is well-established that the use of inconsistent theories in the separate trials of co-defendants is not a violation of the due-process clause. See United States v. Frye, 489 F.3d 201, 214 (5th Cir. 2007) (rejecting similar claim where government made inconsistent arguments at the separate trials of codefendants). Accordingly, habeas relief is denied for this claim as well.

2.

Pondexter also seeks habeas relief for the prosecutor's alleged misstatements of evidence at the guilt-innocence phase of his trial. Pondexter maintains the prosecutor's assertion that Pondexter fired the shot through the brain was contradicted by trial testimony.

The district court granted a COA, however, only on whether "the prosecution's use of inconsistent theories and argument concerning this capital murder offered at [Pondexter's] trial and the trial of co-defendant Henderson invalidates his conviction and sentence". (Emphasis added.) Therefore, this misstatement-of-evidence issue is not properly before this court. See 28 U.S.C. § 2253(c)(1); Dorsey v. Quarterman, 494 F.3d 527, 532 (5th Cir. 2007) (explaining lack of jurisdiction absent a COA).

In the alternative, even assuming the issue is part of the inconsistent-theories claim, for which a COA was granted, it would not change the denial of that claim, for the above-stated reasons. Along that line, the state-court decision on this point, based on waiver for failing to object contemporaneously, was not unreasonable under AEDPA.

III.

For the foregoing reasons, the judgment is AFFIRMED.