# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-70011

United States Court of Appeals
Fifth Circuit

**FILED**

March 27, 2017

Lyle W. Cayce
Clerk

RAUL CORTEZ,

      Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

      Respondent - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:13-CV-83

Before DAVIS, JONES, and HAYNES, Circuit Judges.

PER CURIAM:*

Petitioner–Appellant Raul Cortez appeals the district court's denial of his petition for habeas relief under 28 U.S.C. § 2254. For the reasons below, we AFFIRM the district court's judgment.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-70011

## I. Background

Cortez was convicted of capital murder for his participation in a quadruple homicide and sentenced to death by a Texas state court.[1]  Cortez was represented at trial by John Tatum, Richard Franklin, and Doug Parks. During trial, counsel for Cortez did not object to testimony that polygraph tests helped exclude other suspects, nor did counsel object to testimony that the State's key witness took a polygraph test.

Specifically, the State asked Sergeant Steve Riley whether two prior suspects who had earlier confessed to involvement in the crime, James Jones and Daniel Guajardo, were administered polygraph exams.  Sergeant Riley confirmed this to be true.  The State then asked how the results of the polygraph exams affected the investigation of these two suspects.  As to Jones, the State asked Sergeant Riley whether, "as a result of the examination that was conducted" he "continue[d] to view James Jones as a viable suspect in this case?"  Sergeant Riley responded, "No, sir, he was no longer considered part of this offense."  As to Guajardo, the State asked Sergeant Riley whether "[a]s a result of the knowledge that you gained [from the examination] did you eliminate Daniel Guajardo as a suspect at that time?"  Sergeant Riley responded, "Yes, sir.  Any doubts we had before were now gone."  On cross-examination of Sergeant Riley, however, Cortez's counsel asked whether the "legal system considers the results of polygraph exams to be so unreliable they are not typically even admissible in a court of law?"  Sergeant Riley responded, "That is correct, sir."

The State later asked Detective Diana Tilton whether the State's key witness, Eddie Williams, was administered a polygraph exam, to which she answered in the affirmative.  The State then asked whether, after the exam

---

[1] The facts of the offense are discussed in our opinion granting Cortez's certificate of appealability.  *See Cortez v. Davis*, 665 F. App'x 330 (5th Cir. 2016).

2

was finalized, she had a conversation with the person responsible for administering the exam and what she decided to do as a result of that conversation.   Detective Tilton responded that, after her discussion with the exam's administrator, they "decided to put him in a hotel."  When asked why Williams was placed in a hotel, Detective Tilton explained that "[w]e wanted to try to keep him . . . safe.  We were more certain of his involvement, but we weren't prepared to make an arrest. . . .  [W]e wanted to continue talking to him."

Cortez unsuccessfully sought state habeas relief on numerous grounds, including ineffective assistance of counsel for failure to object to inadmissible polygraph evidence.  The state trial court held an evidentiary hearing and, after making extensive findings of fact and conclusions of law, denied Cortez's request for habeas relief.  The Texas Court of Criminal Appeals subsequently adopted the trial court's findings and conclusions, and denied Cortez's habeas application.  *See Ex Parte Cortez*, No. WR-78666-01, 2013 WL 458197, at *1 (Tex. Crim. App. Feb. 6, 2013).

Cortez then filed an application for a writ of habeas relief under 28 U.S.C. § 2254, which the district court denied in a lengthy and thorough opinion. *Cortez v. Director*, No. 4:13CV83, 2016 U.S. Dist. LEXIS 40700 (E.D. Tex. Mar. 29, 2016).  We granted a certificate of appealability on the question of whether Cortez's counsel's failure to object to the State's reference to and use of otherwise inadmissible polygraph evidence amounted to ineffective assistance of counsel. *Cortez v. Davis*, 665 F. App'x 330 (5th Cir. 2016).

## II.  Standard of Review

Federal habeas relief with respect to claims previously "adjudicated on the merits" in state-court proceedings may not be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).  Moreover, a factual determination made in state court "shall be presumed to be correct" in a subsequent federal habeas proceeding, and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Blue v. Thaler*, 665 F.3d 647, 654 (5th Cir. 2011) (quoting 28 U.S.C. § 2254(e)(1)).  "The clear-and-convincing evidence standard of § 2254(e)(1)—which is arguably more deferential to the state court than is the unreasonable-determination standard of § 2254(d)(2)—pertains only to a state court's determinations of particular factual issues, while § 2254(d)(2) pertains to the state court's decision as a whole."  *Id.* (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

The Supreme Court has emphasized that the Antiterrorism and Effective Death Penalty Act ("AEDPA") prescribes a "highly deferential standard for evaluating state-court rulings," requiring federal courts to give state court decisions "the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011), and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).  "The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  The burden of proof is on the petitioner seeking relief.  *Pinholster*, 563 U.S. at 181.  On appeal, we review the district court's findings of fact for clear error and conclusions of law de novo.  *Pondexter v. Quarterman*, 537 F.3d 511, 519 (5th Cir. 2008).

### III.  Discussion

Cortez argues that his trial counsel provided ineffective assistance of counsel at the guilt-innocence phase of his trial by failing to object to numerous

instances of the State's use of inadmissible polygraph evidence. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The familiar *Strickland* standard requires proof that the lawyer's performance was objectively deficient and also that the petitioner was prejudiced by the deficient performance. *Wood v. Quarterman*, 491 F.3d 196, 202 (5th Cir. 2007). Of course, under our highly deferential standard of review, "the state court's performance and/or prejudice rulings are generally reviewed to determine only whether the state-court decision is unreasonable, not whether, in federal court, petitioner has shown each [ineffective-assistance-of-counsel] prong." *Pondexter*, 537 F.3d at 519. At bottom, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Cortez argues that the state court misapplied federal law when it rejected his claim that his counsel was ineffective for failing to object to the polygraph evidence. Cortez further maintains that his counsel's deficient performance was prejudicial because the polygraph evidence was used both to discount other suspects who had earlier confessed to involvement in the crime and to bolster the credibility of the State's key witness despite evidence of numerous false statements. We address each argument in turn. Because the state trial court was the last state court to provide a reasoned decision in this matter, *see Ex Parte Cortez*, 2013 WL 458197, at *1, we review that court's findings of fact and conclusions of law. *See Woodfox v. Cain*, 772 F.3d 358, 369 (5th Cir. 2014).

### A. Deficient Performance

To establish deficient performance, Cortez needed to show in his state habeas proceeding that his counsel's failure to object to polygraph evidence

"f[e]ll below an objective level of reasonableness" "in light of all the circumstances as they appeared at the time of the conduct." *Pondexter*, 537 F.3d at 520. *Strickland* mandates a "strong presumption" that the challenged conduct fell within the "wide range of reasonable professional assistance." 466 U.S. at 689.

As to counsel's performance, the state habeas court made the following findings:

> 24. [Cortez]'s counsel's primary defense strategy was to gain credibility with the jury so the jury would believe [Cortez] when he testified at the guilt/innocence stage of trial.
>
> 25. With their primary defense strategy in mind, [Cortez]'s counsel made the decision not to object to testimony about polygraph examinations, to avoid appearing to the jury like counsel were trying to prevent the jury from hearing the truth.
>
> 26. Counsel's defense strategy was reasonable, and the strategy was supported by their decision not to object to testimony about polygraph examinations.
>
> 27. Counsel's decision to appear open and honest about the nature of the police investigation also supported their defensive theme that the police investigation was inept.
>
> 28. One of [Cortez]'s defensive themes was that the McKinney Police Department felt considerable pressure to solve the murders and the pressure made them inept in their investigation of this case.
>
> . . . .
>
> 31. If [Cortez]'s counsel made too many objections during the police officers' testimonies about the police investigation, however, the jurors may have thought that the police investigation appeared inept only because [Cortez]'s counsel were preventing them from hearing about the full investigation.
>
> . . . .

33. It was reasonable for [Cortez]'s counsel not to object to the inadmissible polygraph testimony to avoid muddying the waters about the police investigation and detracting from [Cortez]'s defensive theory that the police investigation was inept.

34. It was also reasonable strategy for [Cortez]'s counsel to allow the jury to hear that the police used a subjective, unreliable tool in their investigation.

. . . .

36. The testimony that the police used polygraphs in their investigation supported [Cortez]'s defense that the police investigation was inept because the jury could have concluded that the police used a subjective, unreliable investigative tool.

. . . .

39. [Cortez]'s counsel were aware that making objections to insignificant testimony can sometimes antagonize the jury and negatively affect the defendant.

40. Since [Cortez] planned to testify at his trial, it was particularly reasonable for [Cortez]'s counsel to be concerned with how their objections would affect the jury's view of [Cortez].

41. It was reasonable for [Cortez]'s counsel to choose not to object to the inconsequential polygraph testimony, to avoid antagonizing the jury and negatively affecting [Cortez].

(citations omitted). The state habeas court went on to determine that Cortez's counsel were not deficient for failing to object to the testimony regarding James Jones, Daniel Guajardo, and Eddie Williams having taken polygraph examinations.

Cortez has not established that the state court's decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court or based upon an unreasonable

determination of the facts in light of the evidence presented.[2] "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Crane v. Johnson*, 178 F.3d 309, 314 (5th Cir. 1999) (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983)). We "must strongly presume that trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Pondexter*, 537 F.3d at 519 (quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992)). The state court's determination that not objecting to the testimony regarding polygraph testing was strategy is well supported by the record.[3] Indeed, we have previously noted that

---

[2] As part of Cortez's failure-to-object argument before our court, he maintains that counsel was ineffective for failing to file a motion in limine to exclude any reference to the polygraph tests. The state court did not make any findings explicit to the failure to file a motion in limine, perhaps because Cortez did not make this argument in his state habeas proceedings. Accordingly, we do not construe his petition to be making this claim as a standalone argument but rather as part of the overall picture. *See* 28 U.S.C. § 2254(b); *Nickleson v. Stephens*, 803 F.3d 748, 752–54 (5th Cir. 2015).

In any event, the claim fails. We have previously determined the failure to file a motion in limine and the failure to object to the admission of the testimony was ineffective assistance of counsel where defense counsel executed an affidavit that the failure was not strategy and a "review of the record d[id] not provide a basis for failing to object." *See White v. Thaler*, 610 F.3d 890, 907–08 (5th Cir. 2010). Although Franklin testified that "the idea that [Cortez's attorneys] had some big strategy before the [polygraph] question was asked is not true," Cortez's attorneys also testified that they were surprised by the question regarding polygraph testimony and did not expect the question to be asked. In this vein, the Supreme Court has stated "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. Accordingly, even if we were to address this claim as a standalone issue, Cortez has failed to show that his counsel was deficient for failing to file a motion in limine regarding inadmissible polygraph evidence. *See Charles v. Thaler*, 629 F.3d 494, 502 (5th Cir. 2011) (holding that pre-trial motions in limine "were not feasible because counsel could not have anticipated [inadmissible] testimony"); *see also Dodson v. Stephens*, 611 F. App'x 168, 175–77 (5th Cir. 2015) (holding that it was "reasonable that [counsel] would not anticipate that the prosecution would attempt to offer inadmissible [polygraph] evidence").

[3] Cortez rests his failure-to-object argument in large part on this court's opinion in *Lyons v. McCotter*, 770 F.2d 529, 534 (5th Cir. 1985), wherein we stated that "[t]o pass over the admission of prejudicial and arguably inadmissible evidence may be strategic; to pass

objecting to testimony may actually emphasize that testimony to the jury. *See Walker v. United States*, 433 F.2d 306, 307 (5th Cir. 1970); *see also Charles v. Thaler*, 629 F.3d 494, 502 (5th Cir. 2011). Applying this principle, we recently rejected a claim that failing to object to testimony about polygraph testing constituted ineffective assistance of counsel. *See Dodson v. Stephens*, 611 F. App'x 168, 175–77 (5th Cir. 2015).[4] Cortez's attempts to distinguish *Dodson* are unpersuasive. Although testimony regarding polygraph testing was perhaps more prevalent in this case than it was in *Dodson*, that does not change the fact that the state court determined that the decision not to object constituted strategy. Indeed, here the state court determined that it was strategy not only in terms of not emphasizing the testimony, but also to both gain credibility with the jury in advance of Cortez's own testimony and portray the police investigation as inept for relying on inadmissible polygraph evidence. Again, all of these determinations are supported by the record. At bottom, the state court's conclusion that counsel was not deficient is not unreasonable.

### B. Prejudice

Even assuming, *arguendo*, that the state habeas court unreasonably applied the deficiency prong, we are not persuaded that it unreasonably

---

over the admission of prejudicial and clearly inadmissible evidence, as here, has no strategic value." As a preliminary matter, *Lyons* was pre-AEDPA and did not rely on the doubly deferential standard applicable to this case. *See Knowles v. Mirzayance*, 556 U.S. 111, 123, (2009). Moreover, for Cortez to obtain relief, the state court's application of the law has to be an unreasonable application of federal law as determined by the Supreme Court, not by this court. *See Parker v. Matthews*, 132 S. Ct. 2148, 2155–56 (2012) (per curiam). Finally, the defense counsel in *Lyons* failed to object to the admission of a prior conviction for the same offense and the prosecutor's reference of this prior conviction in closing argument to the effect that "he has done this before." 770 F.2d at 531–32, 534. No argument was made as to what the strategy would or could be for such a decision. *Id.* By contrast, Cortez's counsel chose not to object as part of a larger strategy to portray the police investigation as inept and to gain credibility with the jury prior to Cortez's testimony.

[4] Although *Dodson* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

applied the prejudice prong.  To establish prejudice, Cortez needed to show the state court that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Pondexter*, 537 F.3d at 520 (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Id.*

Cortez encapsulated his prejudice argument in the following statement: "the polygraph evidence was the linchpin that kept Williams's testimony from collapsing on its inconsistencies and simultaneously eroded the direct confessions given by multiple other suspects."  In essence, Cortez maintains that, but for the polygraph evidence, the excluded suspects who previously confessed to the crime—specifically James Jones and Daniel Guajardo—would have appeared credible and the State's key witness, Eddie Williams, would not have appeared credible, which would have raised reasonable doubt as to Cortez's involvement in the crime.  Cortez's argument goes directly to the credibility of the excluded suspects and the State's key witness.

As to Jones and Guajardo, Cortez argues that "the only way the State could exclude the multiple confessors/suspects was to present evidence of the polygraph tests."  In support of this argument, Cortez points to two facts: (1) the testimony at trial showed that the police made their final decision to exclude both Jones and Guajardo after the polygraph tests and (2) the lack of DNA evidence at the crime alone could not definitively exclude them.

The state habeas court, however, found that neither Jones nor Guajardo was credible.  As to Jones, the state court found that the police could not corroborate anything he said about the murders; he was excluded from the DNA evidence found at the scene; he provided false information to the police; he had no connection to significant aspects of the crime; he gained his information about the murders from a search warrant affidavit, press releases,

and information supplied by the police interviewers; and he was not credible in his videotaped interviews with police.  As to Guajardo, the state court found that Guajardo gained his knowledge about the murders from media coverage commemorating the one-year anniversary of the crime; provided false information to the police; was excluded from the DNA evidence; had no connection to significant aspects of the crime; and told conflicting versions of the crime, which rendered his confession not credible.

In light of this evidence, the state habeas court concluded that even without the testimony about the polygraph tests, the jury would have found that Jones and Guajardo were not involved in the murders.  Cortez's argument to the contrary—without any attempt to attack the factual premises underlying the state court's credibility determinations—is not enough to overcome the strong presumption of correctness afforded to state court credibility determinations.  *See Kinsel v. Cain*, 647 F.3d 265, 270 (5th Cir. 2011) ("[C]redibility determinations in particular are entitled to a strong presumption of correctness.").

Cortez's argument that Williams would not have appeared credible absent the polygraph evidence fails for similar reasons.  Cortez points to inconsistencies in Williams's testimony, admissions from Williams that he initially lied about various aspects of the crime, and testimony elicited at trial showing that the police were "more certain of [Williams's] involvement" after a discussion with the person who administered Williams's polygraph test.

The state habeas court, however, found that Williams's testimony about the murders was credible and that it was corroborated by other evidence linking Cortez to the murders.  For instance, Cortez was the only suspect who could not be excluded from the DNA found on latex glove pieces that had broken off on duct tape wrapped around the victim's face; a bullet from one of the guns used in the crime was found in the ceiling of Cortez's house; and the

No. 16-70011

get-away vehicle was found across from an apartment where Cortez once lived. In light of these factual findings, the state court concluded that even without the polygraph evidence, the jury would have found Williams's trial testimony credible.  This finding is consistent with the prosecution's closing argument at Cortez's trial, which focused on the physical evidence corroborating Williams's testimony and said nothing about the polygraph evidence.  We must give deference to the trial court's credibility determination in the face of conflicting evidence that is not clear and convincing.  *See, e.g.*, *Butler v. Stephens*, 625 F. App'x 641, 650 (5th Cir. 2015) ("[E]ven if we disagreed with the focus of the trial court on some evidence over other evidence or might have made different credibility determinations and findings, that disagreement would not be sufficient to grant habeas relief . . . absent clear and convincing evidence to the contrary of its factual findings."), *cert. denied*, 136 S. Ct. 1656, *reh'g denied*, 137 S. Ct. 286 (2016).  Cortez has not overcome this presumption.

Accordingly, there is support in the record for the state court's determination that the polygraph evidence did not prejudice Cortez, and Cortez fails to show that this determination was based on an unreasonable view of the facts.

AFFIRMED.