# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-70029

United States Court of Appeals
Fifth Circuit

**FILED**

February 18, 2015

Lyle W. Cayce
Clerk

LICHO ESCAMILLA,

Petitioner-Appellant

v.

WILLIAM STEPHENS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CV-2248

Before SMITH, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

After the district court denied Licho Escamilla's petition for writ of habeas corpus, *Escamilla v. Thaler*, No. 3:06-CV-2248-O, 2012 WL 1019605 (N.D. Tex. Mar. 26, 2012), we granted in part and denied in part his request for a certificate of appealability (COA), granting a COA with regard to his claim that his trial attorneys' failure to investigate and present adequate mitigating evidence at the penalty phase of his capital trial violated his Sixth Amendment

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

right to effective assistance of counsel. *See Escamilla v. Stephens*, 749 F.3d 380 (5th Cir. 2014). Upon considering oral arguments and further briefing, we pretermit the issue of whether defense counsel provided deficient representation under *Strickland v. Washington*, 466 U.S. 668 (1984), and conclude that the state habeas court's decision that Escamilla was not prejudiced by counsel's deficiencies was not objectively unreasonable in light of clearly established federal law. We therefore affirm the district court's judgment denying Escamilla's habeas petition.

## I.

## A.

"In a habeas corpus appeal, we review the district court's findings of fact for clear error and its conclusions of law *de novo*, applying the same standards to the state court's decision as did the district court." *Lewis v. Thaler*, 701 F.3d 783, 787 (5th Cir. 2012) (quoting *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004)). Our review is therefore governed by the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified in relevant part at 28 U.S.C. § 2254(d). *See Miller v. Thaler*, 714 F.3d 897, 901 (5th Cir. 2013); *Druery v. Thaler*, 647 F.3d 535, 538 (5th Cir. 2011). Under § 2254(d)(1), a state prisoner's

> application for a writ of habeas corpus . . . shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[,] or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lewis*, 701 F.3d at 788. "A state court decision is 'contrary to' federal precedent if it applies a rule that contradicts the governing law set

forth by the Supreme Court or if it involves a set of facts that are materially indistinguishable from a Supreme Court decision but reaches a result different from that Court's precedent." *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010).

Accordingly, § 2254 creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner bears the burden of showing that "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011). As the Supreme Court has recently reiterated:

> This standard . . . is difficult to meet. [C]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an "unreasonable application of" those holdings must be objectively unreasonable, not merely wrong; even "clear error" will not suffice. Rather, [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal citations and quotation marks omitted).

## B.

The Supreme Court has held that to establish a viable ineffective-assistance-of-counsel claim the petitioner must demonstrate both that "counsel's performance was deficient[,] . . . [meaning] counsel's representation fell below an objective standard of reasonableness," and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687-88. To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

Applying the *Strickland* two-part test, the Court has found that a failure to reasonably investigate and present mitigating evidence to a sentencing jury, when such evidence would have been uncovered by a reasonably competent defense attorney, amounts to ineffective assistance of counsel.  *See, e.g.*, *Williams v. Taylor,* 529 U.S. 362, 395 (2000) (finding that by declining to pursue possible witnesses, neglecting to prepare a mitigation defense until one week before trial, and failing to discover readily available documentary evidence, Williams's trial attorney performed deficiently under *Strickland*, and that such deficiency prejudiced the petitioner); *Wiggins v. Smith,* 539 U.S. 510 (2003) (holding that a failure to investigate a capital defendant's social history and consequent failure to present mitigating evidence regarding the defendant's history of sexual abuse and other traumatic childhood events, amounted to a violation of the defendant's Sixth Amendment right to effective assistance of counsel).

In conducting the *Strickland* prejudice analysis in this context, the Court has explained that we must consider both the "newly uncovered evidence" presented to the state habeas court, "along with mitigating evidence introduced during [the petitioner's] penalty phase trial, to assess whether there is a reasonable probability that [the petitioner] would have received a different sentence after a constitutionally sufficient mitigation investigation." *Sears v. Upton*, 561 U.S. 945, 956 (2010).  After "compar[ing] the evidence actually presented at sentencing with any additional mitigating evidence presented in the habeas proceeding[,]" we inquire as to "whether under the applicable state capital sentencing statute, the additional mitigating evidence [is] so compelling that there [is] a reasonable probability that at least one juror

could have determined that because of the defendant's reduced culpability, death [is] not an appropriate sentence." *Ruiz v. Stephens*, 728 F.3d 416, 424 (5th Cir. 2013) (internal quotation marks and footnote omitted). In so doing, we consider all evidence presented to the state habeas court, without limiting our analysis to evidence that would have been admitted under Texas evidentiary rules.[1] *Id.* at 424-25. Considering the totality of the evidence, we then must determine whether the state habeas court's decision regarding prejudice was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woodall*, 134 S. Ct. at 1702.

## II.

We incorporate by reference the factual and procedural background detailed in our opinion granting in part Escamilla's COA. *See Escamilla*, 749 F.3d at 383-86. For the reasons that follow, we pretermit the deficiency inquiry[2] and conclude that the state habeas court's determination that Escamilla failed to establish that he was prejudiced by his trial attorneys' alleged deficiencies was not an unreasonable application of clearly established

---

[1] The state argues that the bulk of the evidence presented to the state habeas court constituted inadmissible hearsay evidence that is "unsourced" and thus Escamilla cannot use this evidence to support a finding of prejudice. The state's suggestion that this court may not consider hearsay evidence disregards Fifth Circuit precedent to the contrary. Recently, this court has explained that "in assessing prejudice, 'we need not . . . make the state-law evidentiary findings that would have been at issue at sentencing.' Consequently, we conduct our analysis by 'evaluat[ing] the totality of the evidence—both that adduced at trial, and the evidence adduced in the habeas proceedings.'" *Ruiz*, 728 F.3d at 424-25; *see also Sears*, 561 U.S. at 950 n.6 ("[W]e have ... recognized that reliable hearsay evidence that is relevant to a capital defendant's mitigation defense should not be excluded by rote application of a state hearsay rule."). Accordingly, our inquiry will include consideration of all of the evidence presented to the state habeas court, regardless of whether such evidence would be admissible at a trial in Texas state court.

[2] *See Amador v. Quarterman*, 458 F.3d 397, 412 (5th Cir. 2006) (citing *Strickland*, 466 U.S. at 697); *United States v. Pierce*, 959 F.2d 1297, 1302 (5th Cir. 1992) ("An insufficient showing of prejudice pretermits addressing the adequacy prong.").

law and, therefore, under AEDPA, the state habeas court's judgment must be upheld. *See, e.g.*, *Visciotti*, 537 U.S. at 26-27 (finding that habeas relief is "not permissible under § 2254(d)" unless the state-court decision is objectively unreasonable, even if a "federal habeas court . . . , in its independent judgment, [would find that] the state-court decision applied *Strickland* incorrectly").

We assume without deciding that Escamilla's trial attorneys provided deficient representation during the investigation and presentation of his mitigation case at sentencing. *See Strickland*, 466 U.S. at 697 (instructing that we "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"). We therefore proceed directly to the prejudice inquiry, comparing the mitigating evidence—both the evidence that trial counsel presented to the sentencing jury and the evidence presented to the state habeas court—to the aggravating evidence to determine whether the state habeas court unreasonably determined that Escamilla failed to present "a reasonable probability that, absent the error, the sentencer would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Sonnier v. Quarterman*, 476 F.3d 349, 356-57 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 695).

We begin with an analysis of the mitigating evidence adduced during the penalty phase of trial. The sentencing jury heard evidence that Escamilla was a "pretty normal" kid until age eleven, when his older brother was arrested and detained after retaliating against two men who had assaulted Escamilla, and Escamilla consequently felt severe guilt for his brother's incarceration and the resulting hardship on the family. The jurors also learned of Escamilla's loving relationship with his mother who passed away while he was confined at a youth detention facility, and of the change in Escamilla's behavior after his

mother's death. An old childhood friend of Escamilla's also testified that he used to get into "mischief" and smoke marijuana with Escamilla and his brother. Additionally, the jury heard from Escamilla's father that he and his late wife provided ample advice to Escamilla and did everything they could, but Escamilla failed to heed this advice. In summation, the jurors heard pleas from defense counsel to consider the severity of a life sentence and to carefully follow the jury charge. Counsel also reminded the jurors that after Escamilla's mother's death, he began to drink alcohol more frequently, and that the two dangerous "ingredients" that contributed to his criminality—alcohol and weapons—would not be available to him in prison. The state used some of the defense's mitigating evidence to advocate for the death penalty—urging the jurors to consider that Escamilla had a "pretty normal" childhood, had supportive, loving parents, experienced "no disadvantages" in his background, and yet chose a life of crime.

Post-conviction counsel hired a mitigation investigator who uncovered detailed evidence regarding Escamilla's troubled childhood that, in part, was inconsistent with the depiction of Escamilla's upbringing that was presented to the sentencing jury. Escamilla's state habeas petition included various affidavits and exhibits that together portrayed a troublesome social and family history, including evidence that (1) Escamilla's father abused alcohol, physically assaulted his wife, and sometimes hit the children with a belt or his bare hands; (2) Escamilla and his siblings witnessed their father's physical abuse of their mother; (3) Escamilla and his older brothers were involved with a gang from an early age and all sold and used drugs; (4) from a very young age, Escamilla admired his older brother's gang involvement; (5) Escamilla began using marijuana and alcohol at a very early age, later severely abused alcohol and smoked marijuana, and was unable to access recommended

substance abuse treatment; and (6) members of Escamilla's immediate and extended family have significant criminal history records. The sentencing jury had heard some of this evidence such as Escamilla's use of alcohol and marijuana at a young age. The state habeas attorneys' investigation revealed, however, that the sentencing jurors were not presented with evidence regarding the extent of Escamilla's substance abuse or the nature of his upbringing that included familial violence and gang involvement.

On the aggravating side of the scale, the sentencing jury was presented with evidence that Escamilla, while fleeing from a gun fight with police, stopped over a fallen police officer, Christopher James, to fire deadly shots into his head, at close range. Thereafter, Escamilla bragged about shooting the officer, and publicly admitted to killing the officer during a television interview. In addition, the sentencing jury was presented with evidence that shortly before the murder of Officer James, Escamilla fatally shot another man in his neighborhood, Michael Torres. The state additionally presented evidence that from a young age, Escamilla engaged in violent or reckless criminal activity—including two high speed police chases and a physical assault of an Assistant Principal. The state habeas court, looking to this aggravating evidence, reasoned that the mitigating evidence was unlikely to "tip the scales" in Escamilla's favor.

The mitigating evidence presented to the state habeas court is compelling and "might well have helped the jury understand [Escamilla], and his horrendous acts—especially in light of the purportedly stable upbringing" that the sentencing jury was presented with at the penalty phase of Escamilla's trial. *Sears*, 561 U.S. at 947. However, weighing the substantial aggravating evidence against the totality of the mitigating evidence here, we cannot conclude that the state habeas court made an "error beyond any possibility for

fairminded disagreement," *Woodall*, 134 S. Ct. at 1702, when it held that Escamilla failed to demonstrate that, but for counsel's alleged errors, there is a reasonable probability of a different outcome. *See Strickland*, 466 U.S. at 694.

"Our conclusion in this regard is illumined, although not necessarily controlled by, a comparison with cases in which the Supreme Court determined whether there was a reasonable probability that the trial attorneys' failure to discover and present mitigation evidence had affected the outcome of the sentencing proceedings." *Sonnier*, 476 F.3d at 360. For example, in *Wiggins v. Smith*, the only evidence that Wiggins's trial attorney presented to the sentencing jury was Wiggins's lack of prior criminal history. 539 U.S. at 537. Comparatively, post-conviction counsel uncovered evidence of sexual abuse, rape, physical abuse, homelessness, as well as an "alcoholic, absentee mother," and evidence that Wiggins had "diminished mental capacities." *Id.* at 535. The Court found that in light of the mitigating evidence uncovered in post-conviction proceedings that was never presented to the sentencing jury, "there is a reasonable probability that at least one juror would have struck a different balance." *Id.* at 537. Similarly, in *Rompilla v. Beard*, the Court found that the petitioner was prejudiced by his trial attorney's failure to review the prosecution's case file which contained readily identifiable "red flags" that would have led reasonably competent counsel to investigate further and likely discover evidence of Rompilla's "organic brain damage[] an[d] extreme mental disturbance significantly impairing several of his cognitive functions[,] [which] relate back to his childhood, and were likely caused by fetal alcohol syndrome." 545 U.S. 374, 392 (2005). Rompilla's school records additionally revealed that his "IQ was in the mentally retarded range." *Id.* at 393. Post-conviction counsel additionally uncovered evidence that Rompilla and his siblings were

subject to extremely severe disciplinary tactics from an abusive father, including, for example, being locked in a "small wire mesh dog pen that was filthy and excrement filled." *Id.* at 391-92. Rompilla and his siblings "had no indoor plumbing in the house, . . . slept in the attic with no heat, and . . . were not given clothes and attended school in rags." *Id.* at 392.

Although, as the Supreme Court has explained, "§ 2254(d)(1) [does not] require an 'identical factual pattern before a legal rule must be applied,'" *Woodall*, 134 S. Ct. at 1706 (quoting *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007)), the distinction between Escamilla's case and the extreme facts involved in *Wiggins* and *Rompilla* supports our conclusion that the state habeas court's error, if any, cannot be said to be "so obvious . . . that there could be no 'fairminded disagreement' on the question." *Id.* at 1706-07. The state habeas court therefore did not unreasonably apply federal law in concluding that the substantial aggravating evidence here outweighed the mitigating evidence uncovered by post-conviction counsel.

## CONCLUSION

The state habeas court's denial of Escamilla's Sixth Amendment ineffective-assistance-of-counsel claims was not an unreasonable application of clearly established federal law as determined by the Supreme Court. We therefore AFFIRM the district court's denial of Escamilla's habeas petition.