# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-70011

United States Court of Appeals
Fifth Circuit

**FILED**

November 14, 2016

Lyle W. Cayce
Clerk

RAUL CORTEZ

> Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

> Respondent - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:13-CV-83

Before DAVIS, JONES, and HAYNES, Circuit Judges.

PER CURIAM:*

Raul Cortez, a state prisoner sentenced to death in 2009 for the murder of Austin York, in connection with the murders of Rosa and Mark Barbosa, York, and Matt Self during a robbery, seeks a certificate of appealability ("COA") with respect to the following claims: (1) ineffective assistance of counsel in the guilt-innocence phase for (a) failing to interview witnesses Gustavo Rodriguez and John Brown; and (b) failing to object to the State's

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-70011

reference to and use of otherwise inadmissible polygraph evidence; and (2) a *Brady*[1] violation premised on allegedly misrepresenting whether a plea agreement had been reached with witness Eddie Williams before Cortez's trial. Concluding that reasonable jurists would debate the district court's resolution of only one of these claims, we DENY a COA as to issues 1(a) and 2. Given the low threshold for a COA and the instruction to resolve close questions in death penalty cases in favor of granting a COA, we GRANT a COA on issue 1(b).

The facts of the offense are described in detail in the opinion of the Texas Court of Criminal Appeals, so we address them only briefly here. *See Cortez v. State*, No. AP-76101, 2011 WL 4088105, at *1–4 (Tex. Crim. App. Sept. 14, 2011) (not designated for publication) ("*Cortez I*"). The State alleged that Cortez, his brother, Javier, and Eddie Williams conspired to steal from Rosa Barbosa who was believed to have access to money from her work as a cashier at a local check-cashing establishment and to keep some of that money in her home. During the attempted robbery at her home, the other three victims arrived unexpectedly. Ultimately, all four were shot and died. Cortez is alleged to have participated in all of the killings and to have personally shot one of the men. During the course of the investigation of the shootings, several people confessed, but their confessions were later deemed to be false. One of the key witnesses at Cortez's trial was alleged co-conspirator, Eddie Williams.

In addition to denying relief on Cortez's direct appeal, *Cortez I*, 2011 WL 4088105, at *26, the Texas Court of Criminal Appeals denied habeas relief, *Ex parte Cortez*, No. WR-78666-01, 2013 WL 458197, at *1 (Tex. Crim. App. Feb. 6, 2013) (not designated for publication) ("*Cortez II*"). Thereafter, he filed an application for federal habeas relief pursuant to 28 U.S.C. § 2254 in federal district court. In a lengthy and thorough opinion, the district court denied

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1962).

2

relief and also denied a COA. *Cortez v. Director*, No. 4:13-cv-00083, 2016 WL 1228780 (E.D. Tex. Mar. 29, 2016) (*"Cortez III"*). Cortez then filed a timely notice of appeal the same day.

The standards for a COA in such a case are well settled. Cortez must demonstrate that his claims of constitutional violations are such that jurists of reason would debate the district court's disposition of the same. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). We are charged with reviewing the case only through this prism and not deciding the ultimate merits. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003). In a case under § 2254, where the state determined the issues on the merits, we are required to give deference to the state court's resolution. In determining whether to grant a COA, then, we must approach the debatability of the district court's decision through the lens of AEDPA deference. *See Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (AEDPA prescribes a highly deferential standard for federal courts reviewing habeas petitions challenging state court determinations on the merits). As well, we must assess the COA question in a case asserting ineffective assistance of counsel in light of the well-established standards of *Strickland v. Washington*, 466 U.S. 668 (1984), which are deferential to strategic decisions of counsel. However, in a death penalty case, doubts about granting a COA should be resolved in favor of a grant. *Escamilla v. Stephens*, 749 F.3d 380, 387 (5th Cir. 2014).

With these principles in mind, we turn to the allegations Cortez raises.

*Witnesses.* Cortez faults counsel for failing to interview Gustavo Rodriguez who allegedly saw "three black guys," who, Cortez contends, could not have included him as he is a "light-skinned" Hispanic man. Additionally, some of the prior confessors were African American. Cortez contends that his attorneys did not interview Rodriguez. One of the attorneys, John Tatum, testified at the state habeas evidentiary hearing that one of his investigators

interviewed Rodriguez and decided that much of his testimony would corroborate that of Eddie Williams, whom Tatum sought to discredit as the main witness against Cortez. Another of Cortez's lawyers, Richard Franklin, echoed the concern that Williams's testimony was otherwise uncorroborated but would have been corroborated by Rodriguez. Williams had told the police that all three men were dressed in black and wearing ski masks, with slits only for their eyes and mouth. Given counsel's strategy of attacking the police investigation and proffering numerous other potential perpetrators, the attorneys did not want to do anything that would verify any of Williams's story. The state court opinion concluded that the attorneys had investigated Rodriguez and made a strategic decision not to call him. The district court noted that claims of uncalled witnesses are not favored and that strategic decisions of counsel made after a thorough investigation are "virtually unchallengeable." *Cortez III*, 2016 WL 1228780, at \*10 (quoting *Strickland*, 466 U.S. at 690–91).

We conclude that jurists of reason would not debate the district court's conclusion that the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States and did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented. *See id.* We DENY a COA on this claim.

Turning to the other witness at issue, John Brown, Cortez alleges that his counsel was ineffective in failing to call Brown and in relying solely on the State's investigation of Brown in making that determination. Cortez contends that Brown would have provided an alibi for the time of the murders and that his attorneys should have interviewed him. Brown gave an affidavit that was inconsistent with previous statements to police that were very muddled as to the timing of Brown's interactions with Cortez in the relevant time period.

4

No. 16-70011

Tatum testified that he watched the tape of Brown's police interview, concluded that Brown would make a "terrible witness," and specifically discussed calling Brown with Cortez, who agreed with the decision not to call Brown.  Franklin testified that Brown was the "only living human being who could put Cortez in [the city where the murders occurred] on the day of the murders."  The state court, after considering all of the evidence, concluded that Brown would have hurt Cortez's case and also would have shown Cortez to be a remorseless person.  Similar to Rodriguez, the district court assessed the cases regarding uncalled witnesses and strategic calls and concluded that the state court's decision was not contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States and did not result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented.  *Id.* at *20.  Because we conclude that reasonable jurists would not debate the district court's conclusion, we DENY a COA on this claim.

*Polygraph.*  Cortez argues that his attorneys were ineffective for failing to object to the introduction of evidence that other potential suspects and star witness Williams were subjected to polygraph examinations.  As to the former, the testimony further showed that after those examinations, the police no longer considered those people to be suspects.  Cortez argues that this evidence is clearly inadmissible under state law and his counsel should have sought a motion in limine to keep this evidence out and/or objected when it was offered.  For their part, his attorneys testified that they did not file a motion in limine, offering no reason for failing to do so but that once the matter was brought up at trial, they chose to forego objecting for strategic reasons.

A COA should be granted if jurists of reason could debate an issue; "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that

5

petitioner will not prevail." *Miller-El*, 537 U.S. at 338. If we are in doubt about whether to issue the COA in a death penalty case such as this one, we should grant it. *Escamilla*, 749 F.3d at 387. Although we have considerable doubt about Cortez's ultimate success on this claim, we conclude that it is debatable enough that it deserves encouragement to proceed further. We thus GRANT a COA on the question of whether Cortez's counsel was constitutionally ineffective for failing to prevent or object to the admission of evidence about polygraph examinations of other suspects and witness Williams.

*Brady*. Cortez's *Brady* claim is based upon his contention that Williams denied having any kind of "deal" with the district attorney, yet he was later sentenced only to twenty years after pleading guilty to three of the murders and reaching a plea deal with the state under which he will be eligible for parole in July of 2017. Undoubtedly, if the state had an agreement with Williams prior to his testimony and failed to disclose it to the defense, Cortez would have a claim that would be debatable by jurists of reason. *See United States v. Davis*, 609 F.3d 663, 696 (5th Cir. 2010) (noting that a *Brady* violation occurs "when a cooperating witness denies having a plea agreement and the prosecutor fails to correct the misstatement" (citation omitted)). However, the state contends and offered evidence to the effect that the plea agreement with Williams was not reached until February of 2010, one year after Cortez's trial. The lead prosecutor in the Cortez trial testified that he never met with Williams prior to his appearance as a witness at Cortez's trial and did not instruct or authorize anybody in his office to do so. He testified that in discussions with Williams's counsel prior to Cortez's trial, the prosecutor specifically stated that he was not making any promise of leniency or plea recommendation in exchange for the testimony and that any such discussions would occur only after the Cortez trial. Williams's attorney testified to the same basic facts. Cortez, in turn, argued that there "must have been a deal"

because no one would testify as Williams did without one. The state court concluded that there was no pre-existing agreement based upon the testimony of counsel and Williams himself. Accordingly, there was no violation because there was nothing to disclose.

The district court noted that Cortez "uses the term 'charade' in disputing the state court findings, but he has not rebutted the presumption of correctness that must be accorded to the findings with clear and convincing evidence, as required by § 2254(e)(1)." *Cortez III*, 2016 WL 1228780, at *32. As in the district court, Cortez offers us only his belief and supposition that the prosecutor, Williams, and Williams's attorney must be lying. We conclude that reasonable jurists would not debate the district court's resolution of this claim and DENY a COA on this claim.

Accordingly, we GRANT a COA on the following issue: whether Cortez's counsel was constitutionally ineffective for failing to prevent or object to the admission of evidence about polygraph examinations of other suspects and witness Williams. As to this issue, we note that it appears to have been fully briefed by the parties. Nevertheless, in order to insure complete briefing, we will allow for additional briefing now that a COA has been granted; however, repetition is to be avoided, and if the parties wish to rest upon the briefs already filed, they may do so. *See Butler v. Stephens,* 600 F. App'x 246, 248 n.4 (5th Cir. 2015). Any additional briefing on this issue should be filed by the petitioner within thirty days of this order, and the state may respond within thirty days thereof. Extensions will be granted only by order of this panel for exceptional circumstances shown.

All other relief is DENIED.

7